IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**KLUG BROTHERS, INC.,**

      Plaintiff,

v.                                  **CIVIL ACTION NO. 5:22-CV-130**
                                      Judge Bailey

**A. FOLINO CONSTRUCTION, INC.,**

      Defendant.

## ORDER GRANTING PLAINTIFF/COUNTERCLAIM DEFENDANT KLUG BROTHERS, INC.'S RENEWED MOTION FOR SUMMARY JUDGMENT

Pending before this Court is plaintiff/counterclaim defendant Klug Brothers, Inc.'s ("plaintiff") Renewed Motion for Summary Judgment [Doc. 72] and accompanying Memorandum in Support [Doc. 72-1], filed December 6, 2023. Defendant/counterclaim plaintiff A. Folino Construction ("defendant") filed a Response in Opposition [Doc. 75] on December 7, 2023. Plaintiff filed a Reply [Doc. 76] on December 8, 2023. Accordingly, this matter is ripe for adjudication. For the reasons contained herein, the Renewed Motion will be granted.

## **PROCEDURAL HISTORY**[1]

Plaintiff filed its complaint on April 14, 2022, in the Circuit Court of Marshall County, West Virginia. *See* [Doc. 1-1]. On May 20, 2022, defendant removed this civil action pursuant to its Notice of Removal. *See* [Doc. 1]. In the complaint, plaintiff alleged it supplied defendant with asphalt on April 28, 2021; May 6, 2021; and May 10, 2021. [Doc. 1-1]. However, plaintiff contends that defendant never paid it for the asphalt, for a total amount owed to plaintiff of $170,449.66. [Id.].

Defendant filed an answer and counterclaim on May 27, 2022, denying the allegations in the complaint and asserting a counterclaim for negligence and breach of contract by alleging the asphalt provided by plaintiff failed to "meet the specifications of what [d]efendant required and specified." [Doc. 3]. According to defendant, the allegedly deficient asphalt had to be removed and replaced at a cost to defendant of $170,449.66, plus an additional $54,908.56. [Id.]. This dispute sounds in principles of contract interpretation and plaintiff now moves for summary judgment as to defendant's counterclaim.

## **BACKGROUND**[2]

Plaintiff is an asphalt manufacturer and supplier in West Virginia, with locations situated in Moundsville, West Virginia and New Martinsville, West Virginia. [Doc. 1-1].

---

[1]This "Procedural History" section is copied entirely from this Court's prior Order Granting in Part and Denying in Part Plaintiff/Counterclaim Defendant Klug Brothers, Inc.'s Motion for Summary Judgment [Doc. 37].

[2]This "Background" section is copied almost entirely from this Court's prior Order Granting in Part and Denying in Part Plaintiff/Counterclaim Defendant Klug Brothers, Inc.'s Motion for Summary Judgment [Doc. 37].

Plaintiff filed its complaint against defendant, a Pennsylvania construction company, for failure to pay for asphalt supplied to it by plaintiff. [Id.]. Defendant was awarded a bid by a general contractor, Kiewit Power Constructors, Inc. ("Kiewit"), to complete the surface paving on a project known as The Long Ridge Energy Project ("the Project"). [Id.]. The Project is located in Hannibal, Ohio, and the contract between defendant and Kiewit required the wearing course asphalt to meet Ohio Department of Transportation ("ODOT") standards.

In furtherance of the bid award, defendant contacted plaintiff on or about August 12, 2020, requesting an estimate for asphalt materials to be supplied to the Project. In response to this initial communication from defendant, plaintiff provided a proposal to supply 2,100 tons of HMA Base Course Asphalt Material and 1,300 tons of HMA Wearing Course Asphalt Material; a copy of this proposal has been provided to this Court for consideration.[3] *See* [Doc. 31-3]. The proposal was valid for thirty (30) days. [Id.]. Defendant asserts that this proposal was signed by Dino Folino on October 15, 2020. *See* [Doc. 31-4 at 25:8–10]. However, plaintiff contends that the signed proposal was never received or executed by plaintiff. *See* [Doc. 31-5 at 54]. Accordingly, there is no evidence that the parties entered into a written contract, and the thirty (30) day proposal expired without action. Of particular import is the proposal's apparent lack of specifications for the base course or wearing course material.

Despite having no written contract, on October 19, 2020, defendant, through its agent Litman Trucking, presented at plaintiff's Moundsville location and purchased 2,100

---

[3]While this proposal is dated August 12, 2020, neither party could produce evidence of the proposal's actual transmission date.

3

tons of HMA Base Course Asphalt Material.[4] The HMA Base Course asphalt was applied to the surface lots and road of the Project in October 2020. See [Doc. 31-4 at 42:9–21].

Defendant alleges that on or about April 26, 2021, it requested a copy of the Job Mix Formulas ("JMF") plaintiff utilized for its base course and wearing course asphalt. [Id. at 38:21–22].[5] Defendant further alleges that plaintiff, by and through its employee Karen Saffell, provided defendant with its Base Course and Wearing Course-1 JMF's via text message, although this text message has not been provided.

On April 28, 2021, absent a contract or further written communication, Littman Trucking, on behalf of defendant, presented at plaintiff's Moundsville plant requesting HMA Base Course Asphalt to be delivered to the Project.[6] The order ticket reflecting this transaction is devoid of any mention of ODOT standards relating to asphalt specifications. Throughout the day, Litman Trucking received and delivered 671 tons, more or less, of base course asphalt to the Project.

On May 6, 2021, absent a contract or further written communication, Litman Trucking presented at plaintiff's New Martinsville plant on defendant's behalf requesting HMA Wearing Course Asphalt to be delivered to the Project.[7] The order ticket reflecting this transaction is devoid of any mention of ODOT standards relating to asphalt

---

[4]Defendant's claims do not relate to this asphalt purchased on October 19, 2020, as those materials were received by defendant apparently to its satisfaction, as plaintiff represents it was paid for these materials.

[5]The JMF for the Wearing-1 mix was provided to this Court for consideration. See [Doc. 31-6].

[6]An order ticket evidencing this transaction is provided at [Doc. 31-7].

[7]An order ticket evidencing this transaction is provided at [Doc. 31-8].

specifications. Throughout the day, Litman Trucking received and delivered 641 tons, more or less, of wearing course asphalt to the Project.

On May 10, 2021, absent a contract or further written communication, Litman Trucking presented at plaintiff's New Martinsville plant on defendant's behalf requesting HMA Wearing Course Asphalt to be delivered to the Project.[8] The order ticket reflecting this transaction is devoid of any mention of ODOT standards relating to asphalt specifications. Throughout the day, Litman Trucking received and delivered 639 tons, more or less, of wearing course asphalt to the Project.

According to defendant, at some point after the May 10, 2021, asphalt application at the Project, Kiewit contacted defendant and alleged that a problem existed with the HMA Wearing Course Asphalt. [Doc. 31-4 at 56:18–20]. More specifically, defendant contends that the asphalt "showed mix tenderness, resulting in rutting and surface damage." See [Doc. 3].

On or about August 26, 2021, more than three months after the last asphalt application, plaintiff and defendant met at the Project site to evaluate the asphalt in question. [Doc. 31-4 at 77–78]. At that meeting, plaintiff purportedly offered to supply additional asphalt to defendant; however, defendant refused that asphalt. [Id. at 81:17–20].

Based on this posture and background, plaintiff moved for summary judgment, see [Doc. 31], which this Court granted in part and denied in part.[9] See [Doc. 37].

---

[8]An order ticket evidencing this transaction is provided at [Doc. 31-11].

[9]More specifically, this Court declined to grant plaintiff's requests for summary judgment in certain aspects based on the information presented to the Court at that time,

On December 4, 2023, this Court held a final pretrial conference. After hearing oral argument on plaintiff's pending Motions in Limine, this Court granted plaintiff's Motion in Limine No. 1- Exclude Expert Testimony of Ramon Bonquist, PH.D. and Report of Ramon Bonquist, PH.D., and denied plaintiff's Motion in Limine No. 2 - For Spoliation Sanctions and Memorandum in Support Thereof. *See* [Doc. 68]. Based on this Court's exclusion of Ramon Bonquist, PH.D. and his report, plaintiff filed a Motion for Leave to File Renewed Motion for Summary Judgment [Doc. 70], which this Court granted. *See* [Doc. 71]. The Renewed Motion is addressed herein.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The inquiry performed is the threshold inquiry of

---

but granted summary judgment to plaintiff on defendant's breach of warranty claim because the same was not alleged in defendant's counterclaim. *See* [Doc. 37 at 9]. Following entry of this Order, defendant voluntarily withdrew its negligence claim. *See* [Doc. 58 at 2].

determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See **Matsushita Elec. Indus. Co. v. Zenith Radio Corp.**,* 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); ***Celotex Corp.***, 477 U.S. at 323–25; ***Anderson***, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." ***Anderson***, 477 U.S. at 249 (citations omitted). Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." ***Beale v. Hardy***, 769 F.2d 213, 214 (4th Cir. 1985). Further, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." ***Celotex Corp.***, 477 U.S. at 322.

## **DISCUSSION**

Given the Court's prior rulings and the procedural posture of this case at present, it appears that the only remaining issue before this Court is whether the subject transaction of asphalt constituted a breach of contract based on the specifications of the asphalt provided by plaintiff to defendant. Specifically, defendant asserts plaintiff ". . . produced asphalt mix that did not meet the specifications of what [d]efendant required and specified." See [Doc. 3].

In its Renewed Motion, plaintiff contends that this Court's exclusion of expert testimony has removed defendant's ability to establish that plaintiff breached some contractual obligation to defendant. See [Doc. 72-1]. In Response, defendant argues that its breach of contract claim has always been that the asphalt provided by plaintiff failed to meet any standard or specification, and was defective. [Doc. 75 at 7]. Moreover, defendant asserts that "the record is replete with the testimony and evidence [defendant] intends to set forth proving this breach and the need for a removal and replacement." [Id.].

A reconsideration of the record as a whole in light of this Court's exclusion of Mr. Bonquist leads this Court to the inescapable conclusion that summary judgment must be granted in plaintiff's favor. In order to meet its burden of proof on the operative claim, defendant must prove that the parties agreed to a specific asphalt mix and that the asphalt provided did not meet that specific asphalt mix. To determine whether a specific asphalt mix meets a specific standard requires scientific testing of the asphalt in question. Defendant, presumably, was aware of this issue and retained the services of Mr. Bonquist for that purpose.

There can be no dispute that the parties had an implied contractual relationship for the sale of asphalt. Therefore, the burden of persuasion as to whether the asphalt met specifications is on defendant. "In cases where the moving party will not bear the burden of persuasion at trial, it bears the initial responsibility of identifying an absence of evidence to support the non-moving party's case." **Celotex Corp.**, 477 U.S. at 325.

It occurs to this Court that even assuming, *arguendo*, that defendant required a specific asphalt mix from plaintiff[10], due to the technical and scientific nature of an asphalt mix, defendant must submit scientific evidence that the asphalt provided did not meet its contractual specifications. Defendant cannot meet its burden of proof without presenting expert evidence from the testing of the asphalt mix.

Defendant argues that it can provide lay witness testimony, photographs, and video evidence to describe the condition of the asphalt to meet its burden of proof. [Doc. 75 at 8]. However, these types of evidence do not prove the asphalt did not meet the specific contractual specifications, because they are not conclusive of the contents of the asphalt mix or its chemical structure. Such evidence only proves, as plaintiff argues, that defendant was unsatisfied with its final product. Further, this type of evidence also fails to exclude other factors such as mishandling during shipment, possible improper laying of the asphalt, weather conditions, and asphalt curing interference, etc.

In all reality, these arguments are nothing more than contentions in support of defendant's breach of warranty claim, which this Court previously disallowed based on

---

[10]As articulated by defendant, this Court previously found that this question appeared to be a genuine issue of material fact. However, as articulated herein, that particular inquiry is not necessary to determine given the need for expert testimony in either outcome.

defendant's failure to plead the claim in its compulsory counterclaim.  See [Doc. 37]. Defendant cannot now be permitted to prove his "failure to meet contract specifications" claim through breach of warranty evidence, especially considering the total and apparent lack of expert witness testimony concerning asphalt specifications and quality.  Thus, summary judgment in favor of plaintiff must be granted.

## CONCLUSION

plaintiff/counterclaim defendant Klug Brothers, Inc.'s ("plaintiff") Renewed Motion for Summary Judgment [**Doc. 72**] is **GRANTED**.  Accordingly, the Clerk is **DIRECTED** to enter judgment in plaintiff's favor in the amount of **One Hundred Seventy Thousand Four Hundred Forty-Nine and 66/100 Dollars ($170,449.66)**.  The trial currently scheduled for Tuesday, December 12, 2023, is **CANCELED**.  Furthermore, the Clerk **DIRECTED TO STRIKE** this matter from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

DATED: December 8, 2023.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE